UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
                               :

BUDDY RICHARDSON,              :
                 Plaintiff,   :
                               :          11 Civ. 02320 (LGS)
       -against-            :
                               :        ORDER AND OPINION
THE CITY OF NEW YORK et al,   :
                 Defendants. :
                               :
--------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Buddy Richardson brings this action pursuant to 42 U.S.C. § 1983 against Captain Christopher J. McCormack, the City of New York (the "City") and N.Y.P.D. Police Officers John Doe "1-5" for violations of his rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.  Plaintiff also asserts state law claims for false arrest, unlawful imprisonment, malicious prosecution and negligent hiring, retention, training and supervision.

       Defendants move for judgment on the pleadings dismissing the constitutional claims, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(c).  Defendants move, pursuant to Fed. R. Civ. P. 56, for partial summary judgment seeking dismissal of all other claims against all Defendants, except Plaintiff's false arrest claim against Captain McCormack from the time Plaintiff was detained until a loaded firearm was found in the police van in which he was transported.  For the reasons stated below, Defendants' motion is granted in part and denied in part.  All claims against all Defendants are dismissed except the following claims against Defendant McCormack: the federal claims for false arrest, excessive force, unlawful search and seizure and malicious prosecution.

I.      **Background**

Most of the facts in this case are disputed.  The following description of events is taken from the parties' Rule 56.1 Statements and other evidence in the record and is construed, as required on this motion, in the light most favorable to Plaintiff, the nonmoving party.

This case arises out of the arrest of Plaintiff Buddy Richardson on August 20, 2009, at approximately 12:35 a.m. in upper Manhattan.  Shortly after midnight that night, Plaintiff and his brother, Mohammed Richardson, walked from their mother's house to the deli that was about a block away.  Mohammed Richardson purchased a beer and opened it.  Plaintiff Buddy Richardson, who did not have a beer, warned his brother that he should put his beer in a brown paper bag so that he would not get a ticket.  As the men left the deli, two officers appeared. Mohammad Richardson retreated into the store and attempted to finish his beer quickly, hoping that the officers would not give him a ticket.

Plaintiff Buddy Richardson started walking to his mother's house.  He was carrying a bag containing a shirt and cigarettes.  He testified that, as he was walking away, Captain McCormack pushed him from the front using both hands.  Plaintiff turned around saying, "My brother's the one with the beer.  If you gonna write him a ticket, just write him a ticket."  Buddy Richardson again attempted to walk away, and Captain McCormack punched him on the left side of the face as he was turning around.  Buddy Richardson then backed away saying that he had "nothing to do with it."  Captain McCormack then reached for him, grabbed his tank top and ripped it off in the process.  Other officers appeared and tackled Plaintiff to the street and hit, beat and kicked him.

Meanwhile, police officers took Plaintiff's brother, Mohammed Richardson, out of the deli, handcuffed him and sat him on the sidewalk.  He testified that he observed Captain McCormack "swing on" Buddy Richardson as he was stepping away.  Plaintiff's mother testified

that she observed the events from the window of a friend's apartment, which was across the street from the deli. She testified that she saw the officer approach Buddy Richardson while he was backing away with his arms lowered and saw many officers beating and choking him. Another witness, a passerby, testified that that she saw a lot of police officers hitting Buddy Richardson, who was not resisting.

After Plaintiff was handcuffed, Captain McCormack held his face and back to the ground in the street. The officers searched him and removed all his belongings from his shorts pockets. They then turned him on his back, and Captain McCormack pulled Plaintiff's drawstring shorts and underwear down and searched under his genitals. They then turned him on his stomach, and Office McCormack searched between his buttocks. More officers arrived, and a crowd grew. Plaintiff and three other witnesses (his mother, his brother and a passerby) testified that Plaintiff's genitals and buttocks were visible to those on the street and that Plaintiff, who was still shirtless, was close to naked. According to these same witnesses, Captain McCormack searched between Plaintiffs' buttocks, spreading his butt checks and using his hand to search. At some point during or after the search Plaintiff was shackled so that his feet were bound.

Plaintiff lay exposed in the street for more than a few minutes until the crowd complained and the officers then pulled his shorts up. They left him there for a while longer and then picked him up. Another officer conducted a pat down search while Plaintiff was standing, and then they loaded him into a police van with his brother. At this point, he was clad only in drawstring shorts, underwear, shoes and socks and was bound with handcuffs and leg shackles.

When Buddy Richardson arrived at the precinct, they photographed him, he spit up blood, and they asked if he wanted medical attention. He said yes, and they called an ambulance to transport him to the hospital. According to a hospital invoice, he received a CT scan of the head and brain and other treatment. Richardson received a hospital bill with a charge of over

$2000.   After the hospital visit, police officers returned Plaintiff to the precinct where they put him in the holding pen.  The next morning he was taken to Central Booking and charged.

### A.  Van #5395

Officers Sunil Gidarisingh and Ramon Polanco responded to a call to transport Plaintiff and his brother to Precinct 23 after their arrest.  They drove police van #5395.  Both officers testified by affidavit that they searched the van immediately before picking up Plaintiff and his brother and confirmed that it was free of contraband and weapons.   They again searched the van after the brothers arrived at the precinct.  Officer Gidarisingh testified that he discovered a loaded .40 caliber Taurus handgun in the crevice of the back seat of the van where Richardson had been sitting, bound hand and foot.  Officer Gidarisingh alerted the other officer and then a Sergeant of the discovery.  The two officers affirmed that Buddy Richardson and Mohammad Richardson were the only prisoners transported in police van #5395 between 12:35 a.m. and the search of the van that uncovered the handgun.

Buddy Richardson testified that he did not have a gun on August 20, 2009.

### B.  Parole Revocation Hearing

Plaintiff was charged with criminal possession of a weapon in the second degree and the assault of Captain McCormack in Criminal Court of the City of New York, New York County.  He pleaded not guilty on August 23 and posted bail on August 24, 2009.

After interviewing Captain McCormack, Plaintiff's parole officer found that he was in violation of the terms of his parole and remanded him to Riker's Island.  Plaintiff requested a probable cause hearing to argue that his parole had been wrongfully revoked.  At the hearing, the evidence focused on charge number 3—that Buddy Richardson "punched the arresting officer Sergeant McCormack in the face."  The parole officer elected not to proceed on the weapons

charge or the bootleg cigarettes charge.  The probable cause hearing commenced on September 22, 2009, and after an adjournment continued on October 6, 2009.

Captain McCormack testified on both days and stated the following:  he approached Buddy Richardson suspecting that he had sold untaxed cigarettes because he saw Plaintiff exchange a pack of cigarettes for U.S. currency with a person who turned out to be his brother. When Captain McCormack asked Plaintiff for his identification, he pushed Captain McCormack without provocation, then punched him approximately three times in the head.  Captain McCormack admitted that he ripped off Plaintiff's shirt in an effort to grab him.  Plaintiff tried to flee, but two other police officers arrived and helped Captain McCormack and his partner restrain Plaintiff.  Captain McCormack denied that he touched Plaintiff first and denied that he searched Plaintiff at any time.

The Parole Hearing Officer also heard testimony from Buddy Richardson, Mohammed Richardson, their mother and a fourth witness who was a neighbor, who testified in substance to the beating, strip search and restraint of Plaintiff as described above.  At the conclusion of the testimony, the hearing officer found that Captain McCormack's testimony on September 22 and October 6 were "completely different" and that the testimony was "incredulous."  The Parole Hearing Officer then found no probable cause for charge number three (assaulting a police officer) and lifted the warrant.  The other parole violation charges presumably were dismissed. After being detained more than three weeks at Riker's Island, Plaintiff was released again soon after the October 6, 2009 hearing.

On motion of the District Attorney, the criminal charges against Buddy Richardson were dismissed on March 25, 2010.

## II.      Legal Standard

The Court reviews motions under Fed. R. Civ. P. 12(c) of the Federal Rules of Civil

Procedure for judgment on the pleadings under the same standard as Fed. R. Civ. P. 12(b)(6)

motions to dismiss. *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010).

Therefore, "[t]o survive a Rule 12(c) motion, the complaint 'must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting

*Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)).   The Court accepts as true all well-

pleaded factual allegations and draws all reasonable inferences in favor of the nonmoving party.

*See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).   A complaint

does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 (2009) (alteration in original) (quoting *Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 557).   Rule 8 of the Federal Rules of Civil Procedure "requires factual

allegations that are sufficient to 'give the defendant fair notice of what the claim is and the

grounds upon which it rests.'"   *Anderson News, L .L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182

(2d Cir. 2012), cert. denied, 133 S.Ct. 846 (2013) (quoting *Twombly*, 550 U.S. at 555).

The standard for summary judgment is well established.   Summary judgment is

appropriate where the record before the court establishes that there is no "genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).   The Court must construe the evidence and draw all reasonable inferences in favor of the

nonmoving party.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *In re "Agent

Orange" Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008).   A motion for summary judgment

should be denied "if the evidence is such that a reasonable jury could return a verdict" in favor of

the nonmoving party.   *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178-79 (2d

Cir. 2008).   Summary judgment is warranted if a party "fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III.   Judgment on the Pleadings

Defendants move for judgment on the pleadings with respect to Plaintiff's constitutional claims under the First, Fifth, Eighth and Fourteenth Amendments and Plaintiff's claims for excessive force, malicious prosecution and assault and battery under the Fourth Amendment.

Defendants are entitled to judgment on the pleading with respect to Plaintiff's claims under the First, Fifth and Eighth Amendments.  The Complaint contains no factual allegations to state a claim under these amendments.  *See Brandon v. City of New York*, 705 F. Supp. 2d 261, 268-69 (S.D.N.Y. 2010) ("Such general allegations, without supporting facts other than a clause incorporating an entire complaint by reference, are insufficient to withstand even a motion to dismiss because they do not give 'fair notice of what the claim is and the grounds upon which it rests.'" (quoting *Sforza v. City of New York*, No. 07 Civ. 6122, 2009 WL 857496, at *12 (S.D.N.Y. March 31, 2009))).  Apart from identifying these amendments in the Complaint, Plaintiff does not explain how the facts in this case establish a violation of rights guaranteed by these amendments, nor does he clarify the matter in his opposition to Defendants' motion. Plaintiff fails to allege even the formulaic recitation of the causes of action.

In addition, except for his use of the Fourteenth Amendment as a vehicle for his Fourth Amendment claims, Plaintiff has failed to state a claim for deprivations of any rights under the Fourteenth Amendment for the same reasons.  *See Wolf v. Colorado*, 338 U.S. 25, 27-28 (1949) (Fourth Amendment protection is "implicit in the concept of ordered liberty and as such enforceable against the States through the Due Process Clause."), *overruled on other grounds by Mapp v. Ohio*, 367 U.S. 643 (1961).  Consequently, Plaintiff's claims under the First, Fifth and Eighth Amendments are dismissed.  Plaintiffs' claims are also dismissed under the Fourteenth

Amendment expect to the extent they serve as a vehicle for Plaintiff to assert his Fourth

Amendment claims.

In contrast, Plaintiff states a claim with respect to his allegations of excessive force and

unlawful search and seizure under the Fourth Amendment.[1]  Plaintiff alleges that Captain

McCormack and other officers grabbed him, tore his shirt and threw him to the ground.  He also

alleges that his shorts were pulled down, that his genitals were exposed and that he suffered

physical injury.  Accepting the factual allegations in the Complaint, and drawing all reasonable

inferences in Plaintiff's favor, the Complaint sufficiently alleges excessive force and an

unreasonable search.  The Complaint provides Defendants with sufficient factual notice to alert

them to the basis for the claim against them.  *See Twombly*, 550 U.S. at 555.  Plaintiff's

allegations of excessive force and unreasonable search and seizure were explored during

discovery and are part of the record before the Court.  Consequently, Plaintiff's Fourth

Amendment claims satisfy Fed. R. Civ. P. 12(c).

## IV.    False Arrest – Federal Claim

Defendants concede that genuine issues of material fact preclude summary judgment on

Buddy Richardson's false arrest claim from the time that he was detained on the street until the

firearm was found in the police van.  They argue, however, that when the gun was found,

probable cause existed for the arrest, and any claim and damages for false arrest were terminated

after that discovery as a matter of law.

The Fourth Amendment "includes the right to be free from arrest absent probable cause."

*Torraco v. Port Auth. Of N.Y. & N.J.*, 615 F.3d 129, 139 (2d Cir. 2010) (internal quotation marks

---

[1] While Plaintiff has not pleaded a state law claim for assault and battery, Plaintiff attempts to assert a federal claim for assault and battery under the Fourth Amendment.  This claim, however, is better viewed as a Fourth Amendment excessive force claim.  *See Graham v. City of New York*, 928 F. Supp. 2d 610, 625 (E.D.N.Y. 2013) ("Federal excessive force claims and state law assault and battery claims against police officers are nearly identical.").

omitted); *see* U.S. Const. amend. IV.  "'Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'"  *Torraco*, 615 F.3d at 139 (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)).  "The inquiry is limited to whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (internal quotation marks omitted).  The fruit of the poisonous tree doctrine is inapplicable to civil actions arising under § 1983, and courts need not ignore evidence recovered as the result of an unlawful search when evaluating claims for damages.  *See Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir.1999) (rejecting plaintiff's claim for damages under § 1983 for his arrest, conviction, and incarceration based on handguns discovered during an unlawful stop); *Nieves v. New York City Police Dep't*, No. 07 Civ. 5751, 2010 WL 330205, at *3 (S.D.N.Y. Jan. 26, 2010) (finding plaintiff's false arrest claim viable only for the period between his initial arrest, which arguably lacked probable cause, and the discovery of narcotics).

Defendants argue that Plaintiff's damages should be limited to the time before the gun was discovered in the police van because, even if the police lacked probable cause to arrest plaintiff earlier, probable cause existed after the gun was discovered.  However, whether Buddy Richardson ever possessed a gun is a disputed fact.  Officers Gidarisingh and Polanco declared that they searched van # 5395 immediately before transporting Buddy Richardson and his brother to the precinct and found no contraband, and then discovered the gun where Buddy Richardson had been sitting immediately after removing him from the van.  Applying deductive reasoning, Defendants argue that a factfinder can only conclude that Buddy Richardson stashed the gun in the van.

On the other hand, Buddy Richardson testified that he did not have a gun and argues that the officers fabricated the discovery of the gun.  In addition to Plaintiff, three witnesses testified that he was searched multiple times before being placed in the van where the gun was found. Plaintiff's evidence shows that after ripping off his tank top, the searches included emptying his shorts pockets; subjecting him to an intrusive public strip search; and then just before putting him in the van, conducting a final pat down search when Plaintiff was handcuffed, shackled, and clad only in drawstring shorts, underwear, shoes and socks.  This evidence casts serious doubt on Plaintiff's ability to conceal a weapon and then hide it in the crevice of the back seat of the police van.  Defendants have not met their burden of showing that no reasonable jury could find that the officers lacked probable cause for the arrest even after the gun was discovered in the van. Consequently, Defendant's motion to limit damages to the time before the gun was discovered is denied.

## V.  Malicious Prosecution – Federal Claim

Genuine issues of material fact preclude summary judgment on Plaintiff's malicious prosecution claim, at least with respect to the charge that Plaintiff assaulted Captain McCormack.

### A.  Legal Standard

Malicious prosecution "vindicates the right to 'freedom from unjustifiable litigation.'" *Rothstein v. Carriere*, 373 F.3d 275, 292 (2d Cir. 2004) (citing *Broughton v. State*, 335 N.E.2d 310, 314 (N.Y. 1975)).  "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (citation omitted).  Under New York law, the elements of a malicious prosecution cause of action are: "(1) the initiation or continuation of a criminal

proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (internal quotation marks omitted).  Additionally, Plaintiff must assert that there was "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights."  *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).  To prevail on a motion for summary judgment, Defendants must show that a reasonable jury could find only for Defendants as to at least one of these elements.

### B.  Application of Law to Facts

#### 1.  Initiation of Proceedings

There is no evidence in the record that Captain McCormack was involved in prosecuting Plaintiff on the firearms charge.  On the other hand, a reasonable jury could conclude that Captain McCormack "initiated" the prosecution of Plaintiff both in criminal court and in the parole revocation proceedings by fabricating the charge that Plaintiff assaulted Captain McCormack.

With regards to the initiation element, it is well established that "the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment," but only "in the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment."  *Townes*, 176 F.3d at 147.  "[G]enerally in malicious prosecution actions alleging that a police officer provided false information to a prosecutor, what prosecutors do subsequently has no effect whatsoever on the police officer's initial, potentially tortious behavior."  *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010); *see also Zahrey v. Coffey*, 221 F.3d 342, 352 (2d Cir. 2000) ("'[A] prosecutor's decision to charge, a

grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial—none of these decisions will shield a police officer who deliberately supplied misleading information that influenced that decision.'" (quoting *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988))); *cf. Higazy v. Templeton*, 505 F.3d 161, 177 (2d Cir. 2007) ("[E]ven if the intervening decision-maker (such as a prosecutor, grand jury, or judge) is not misled or coerced, it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty." (internal quotation marks omitted)).

Although Plaintiff has raised a genuine issue of disputed fact as to whether he possessed the firearm allegedly discovered in the police van, he has not adduced any evidence to show that Captain McCormack was involved in his prosecution for criminal possession of a weapon. Plaintiff argues that Captain McCormack is responsible for initiating the weapons prosecution because he directed his subordinates to how to proceed.  However, the record contains no evidence that Captain McCormack directed the officers who allegedly discovered the weapon or the individuals who made the decision to prosecute Plaintiff for these claims.  Consequently, Defendants' motion for summary judgment is granted with respect to the firearms charge.

In contrast, a reasonable jury could conclude, just as the Parole Hearing Officer did, that Captain McCormack lied when he testified that Richardson assaulted him.  The evidence is sufficient for a jury to conclude that Officer McCormack "initiated" the parole revocation proceedings against Plaintiff.  *See Williams v. Young*, 769 F. Supp. 2d 594, 603 (S.D.N.Y. 2011) (initiating parole revocation proceedings satisfies the first element in a malicious prosecution claim).

The evidence also is sufficient for a jury to conclude that Captain McCormack initiated Plaintiff's prosecution for assault in criminal court.  Even though another officer swore to the

12

Criminal Complaint that was the basis for the prosecution, the complaint states that the assault charge is based on information obtained from Captain McCormack. A reasonable jury could conclude that Captain McCormack misled the prosecutor by fabricating the assault, and thus the prosecutor's decision to charge would not shield Captain McCormack from liability. The fact that there may have been an independent basis to charge Plaintiff with a crime—the gun in the police van—does not preclude Plaintiff from pressing a claim for malicious prosecution as to the assault charge. *See Posr v. Doherty*, 94 F.2d 91, 100 (2d Cir. 1991) (holding that plaintiff may pursue malicious prosecution claim for one charge despite the presence of probable cause on another charge); *cf. Janetka v. Dabe*, 892 F.2d 187, 190 (2d Cir. 1989) (holding that plaintiff may pursue malicious prosecution claim after an acquittal for resisting arrest despite being convicted of a separate charge of disorderly conduct).

Defendants have not satisfied the summary judgment standard as to the initiation element of the malicious prosecution claim with respect to the assault charges in both the criminal and the parole revocation proceeding.

### 2. Termination of the Proceedings in Plaintiff's Favor

The second element of the malicious prosecution claim provides no basis for granting Defendants summary judgment, with respect to the parole violation charges or the criminal prosecution. After a two-day hearing, the Parole Hearing Officer found a lack of probable cause for the parole violation. Subsequently, the criminal charges also were dismissed on the motion of the Assistant District Attorney in March 2010.

### 3. Lack of Probable Cause

For the reasons stated above, a reasonable jury could find that Captain McCormack lacked probable cause on the basis of the assault charge to seek Plaintiff's parole revocation or to

prosecute him in criminal court.  Thus, this element does not provide a basis to grant Defendants summary judgment.

### 4.  Malice

For the same reasons, the fourth element of malicious prosecution—that that the proceeding was instituted with malice—affords no basis to grant Defendants' summary judgment motion.  "'[A] lack of probable cause generally creates an inference of malice.'"  *Manganiello v. City of New York*, 612 F.3d 149, 163 (quoting *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003)).  "Under New York law, malice does not have to be actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'"  *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (quoting *Nardelli v. Stamberg,* 377 N.E.2d 975, 976 (N.Y. 1978)).

In the present case, a reasonable jury could find that Plaintiff never assaulted Captain McCormack and that Captain McCormack commenced the proceedings against Plaintiff for some improper reason rather than to see the ends of justice served.

### 5.  Post-Arraignment Liberty Restraint

There is no dispute that Plaintiff suffered a post-arraignment liberty restraint.  He was in custody from the time he was arrested on August 20 until he posted bail on August 24, and was incarcerated for more than three weeks after the charges against him resulted in a parole violation.  Consequently, because Defendants have not carried their burden of showing that the evidence is so one sided in their favor that as a matter of law at least one of the elements of Plaintiff's malicious prosecution claim must fail, Defendants' summary judgment motion on Plaintiff's malicious prosecution claim is denied.

**VI.     Qualified Immunity**

Captain McCormack is not entitled to summary judgment on his qualified immunity

defense for the malicious prosecution claim as a matter of law at this stage.  Qualified immunity

for a police officer under federal law is appropriate "where '(1) his conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the

time of the challenged act.'"  *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007)

(quoting *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001)).  For the reasons stated above,

disputed issues of fact exist as to whether Captain McCormack's conduct violated clearly

established statutory or constitutional rights, namely the right to be free from malicious

prosecution.  For the same reasons, there are issues of fact as to whether it was objectively

reasonable for Captain McCormack to believe that his actions were lawful at the time of the

challenged act.

"An officer's determination is objectively reasonable if there was arguable probable

cause . . . that is, if officers of reasonable competence could disagree on whether the probable

cause test was met."  *Gonzalez*, 728 F.3d at 157(internal quotation marks omitted).  "If officers

of reasonable competence would have to agree that the information possessed by the officer at

the time of arrest did not add up to probable cause, the fact that it came close does not immunize

the officer."  *Jenkins*, 478 F.3d at 87; *see Manganiello*, 612 F.3d at 164-65 ("'[F]reedom from

malicious prosecution is a constitutional right that has long been clearly established.'" (quoting

*Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003))).  As discussed above, considering the

record evidence in the light most favorable to the Plaintiff, he has raised triable questions of fact

as to whether there was probable cause to arrest and charge him with assault and possession of a

weapon.  Because a reasonable jury could find on the evidence before the Court that Captain

McCormack fabricated the assault charge against Buddy Richardson, Defendant McCormack is not entitled to summary judgment on the basis of qualified immunity at this time. *See Tellier v. Fields*, 280 F.3d 69, 84 (2d Cir. 2000) ("[Q]ualified immunity does not act as a shield for individuals who 'knowingly violate the law.'" (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986))).

**VII.    Federal Claims Against Defendant City of New York**

Defendants' motion for summary judgment on Plaintiff's claims against Defendant City of New York pursuant to 42 U.S.C. § 1983 is granted because there is no evidence on the record to sustain this claim. The municipality cannot be held responsible under § 1983 simply on the theory of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). In order to establish municipal liability under § 1983, Plaintiff must show that "the municipality itself cause[d] the constitutional violation at issue." *Jenkins*, 478 F.3d at 94; *see Peterec v. Hilliard*, No. 12 Civ. 3944, 2013 WL 5178328, at *13 (S.D.N.Y. Sept. 16, 2013) ("[T]here is no cognizable claim for negligent hiring and retention pursuant to Section 1983."). "[A] plaintiff must establish that the violation of his constitutional rights resulted from a municipal custom or policy." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995). If Plaintiff is unable to establish that a municipal policy or practice was the moving force behind the constitutional violation, the municipality cannot be held liable. *See Monell*, 436 U.S. at 694.

Plaintiff asks the Court to take judicial notice of the existence of a "Stop and Frisk" policy in the City. Plaintiff, however, has not provided evidence that would substantiate his claim that Plaintiff's injuries were a result of this policy. The evidence does not suggest that this was a stop and frisk situation. The claims against the City are dismissed.

## VIII.   Pendant State Law Claims

Defendants' motion for summary judgment is granted with respect to Plaintiff's claim for negligent hiring, retention, training and supervision against both the City and Captain McCormack.  Plaintiff's state law claims for false imprisonment, false arrest and malicious prosecution likewise are dismissed against both defendants because the claims are time barred.

### A.   Negligent Hiring, Retention, Training and Supervision

Plaintiff's negligent hiring, retention, training and supervision claim is dismissed against both the City and Captain McCormack.  Under New York law, to state a claim for negligent hiring, training, supervision or retention, a plaintiff must show that: "(1) the tortfeasor and defendant were in an employee-employer relationship; (2) the employer knew or should have known of the employee's propensity for the tortious conduct; and (3) the tort was committed on the employer's premises or with the employer's chattels."  *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 94 (2d Cir. 2011).

The evidence in the record does not support such a claim as there is no evidence concerning hiring, retention, training or supervision.  *See Tsesarskaya v. City of New York*, 843 F. Supp. 2d 446, 463-64 (S.D.N.Y. 2012) ("Summary judgment is appropriate where there is no proof that the employer (here, the City or N.Y.P.D.) acted negligently in hiring, training, supervising or retaining an employee.").  Plaintiff did submit Patrol Guide Procedures for processing firearms, transporting prisoners and search guidelines but even taken in the light most favorable to Plaintiff, without more they do not support a claim of negligence.   Consequently, Defendants' summary judgment motion is granted as to Plaintiff's negligent hiring, training, supervision and retention claim under state law.

**B. False Arrest, Unlawful Imprisonment, Malicious Prosecution, Assault and Battery**

Plaintiff asserts New York common law claims against both defendants for various intentional torts: false arrest, unlawful imprisonment, malicious prosecution, assault and battery. These claims are time barred and therefore dismissed. Under the C.P.L.R., such claims must be brought within one year from when they accrued. N.Y. C.P.L.R. § 215(3) ("The following actions shall be commenced within one year: . . . . an action to recover damages for assault, battery, false imprisonment, malicious prosecution;"); *see DeLong v. Soufiane*, No. 05 Civ. 5529, 2010 WL 234781, at *3 (E.D.N.Y. Jan. 14, 2010) (applying C.P.L.R. § 215(3) to common law assault and battery claims) *Charnis v. Shohet*, 768 N.Y.S.2d 638, 639 (2d Dep't 2003) (applying C.P.L.R. § 215(3) to common law false imprisonment claims); *Camp v. Wolosin*, 622 N.Y.S.2d 291, 292 (2d Dep't 1995) (applying C.P.L.R. § 215(3) to common law malicious prosecution claim). Plaintiff filed this action on April 5, 2011, more than a year after the events in 2009 that gave rise to his claims. Consequently, these claims are time barred.

Section 50–e and 50–i of New York General Municipal Law require a plaintiff asserting state tort law claims against a municipal entity or its indemnitee to file a notice of claim within ninety days after such claim arises and to commence the action within one year and ninety days from the date of which the cause of action accrues. *See Anderson v. City of New York*, 817 F. Supp. 2d 77, 98 (E.D.N.Y. 2011) ("[U]nder the common law, unlike § 1983, a municipality may be held liable for common law false arrest and malicious prosecution on a theory of respondeat superior." (internal quotation marks omitted)). Section 50–e's notice of claim requirement and 50–i's limitations period are applicable to claims brought against individual defendants only if the government "is obligated to indemnify them." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 736 (S.D.N.Y. 2012). Plaintiff's state law tort claims would be untimely under this

statute as well if they somehow survived the shorter statute of limitations under the C.P.L.R.  For this reason as well, Plaintiffs common law tort claims are dismissed.

## IX.    John Doe Defendants

The claims against the NYPD Police Officer John Doe Defendants 1-5 are dismissed because Plaintiff failed to identify or serve them within the 120 days after the filing of the Complaint as required by Fed. R. Civ. P. 4(m).  *See Barclay v. Poland*, No. 03 Civ. 6585, 2013 WL 5703176, at *2 (W.D.N.Y. Oct. 17, 2013); *Delrosario v. City of New York*, No. 07 Civ. 2027, 2010 WL 882990 at *5 (S.D.N.Y. Mar.4, 2010).

## X.    Conclusion

For the reasons stated above, Defendants' motion is GRANTED in part and DENIED in part.

Defendants' motion is granted as follows:  All of Plaintiff's claims against the City of New York and the five John Doe defendants are DISMISSED.  With respect to the claims against Captain McCormack, Plaintiff's claims for violations of the First, Fifth and Eighth Amendments are DISMISSED; Plaintiff's claims for violations of the Fourteenth Amendment are DISMISSED, except to the extent that it serves as a vehicle for Plaintiff to assert his Fourth Amendment claims; and Plaintiff's state law claims for negligent hiring, retention, training and supervision, false arrest, unlawful imprisonment, malicious prosecution and assault and battery are DISMISSED.

Defendants' motion for summary judgment and judgment on the pleadings with respect to Plaintiff's § 1983 claims under the Fourth Amendment for false arrest, excessive force, unlawful search and seizure, and malicious prosecution, is DENIED.

The Clerk of Court is directed to close the motion at docket number 34.

SO ORDERED.

Dated: December 10, 2013
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE